**FILED**
Date: 10/25/2022 via: email
Clerk, U.S. Bankruptcy
Jacksonville Division

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:

AVA ELECTRIS CANNIE                      Chapter 13
a/k/a EVA HELENE CANNIE                   Case No.:  3:10-bk-07291
                                         Case No:  3-22-bk-01880

    Debtor.

_____/

## DEBTOR'S MOTION FOR REHEARING

1. Former Debtor, Ava Electris Cannie ("Debtor"), pursuant to Bankruptcy Rule 9023 & Rule 59, hereby files this motion for rehearing (or to alter or amend judgment) which tolls the time for notice of appeal Rule 8002, as to the Court's Order Denying Debtor's Motions to Re-Open to clean up Mortgage issues, entered on October 12, 2022. (Doc. 781). In support thereof, Debtor states:

2. Debtor needs to clean up some pending matters in reference to the Mortgages which changed hands several times during the pendency of the bankruptcy case 3:10-bk-07291 from 2010-2017.Debtor is trying to get a proper payoff to refinance now in 2022 and there are unwarranted costs on the current payoff which should not be there. The court is open to accommodate the mortgage company but closed when debtor needs errors fixed.

3. The court allowed EverBank to transfer their claim to Green Tree Servicing Inc in 2014 despite that it was outside the plan and that I objected to that.

4. The court allowed Green Tree to change their name to Ditech in 2015. Green Tree failed to tell the court it got indicted for fraud and abuse and was sanctioned $63,000,000.00 million in late 2015 and agreed to pay $48,000,000 to beneficiaries who were harmed like me for Green Tree's failure to post my payments to lower my

mortgage due, and $15,000,000 of penalties to the Federal Trade Commission and Consumer Protection Agency

5. The court allowed Green Tree /Ditech to transfer the mortgage to Wilmington Savings Fund Society Trust dba Christiana Trust dba Pretium Mortgage Acquisition Trust when I was not even there or knew about. And they were outside the plan

6. All these transactions involved a mortgage who was outside the plan but had filed a claim. Any and all creditors were addressed weather in the plan or outside the plan. That is why the former Judge in his confirmation Order #8 addressed all the secured creditors (weather inside or outside the plan.) Rule 105 the Power of the Court gives Judge Funk that right. "Any post-petition costs or expenses incurred by or on behalf of any secured creditor will be discharged upon the Debtor's completion of the plan, unless specifically provided for in this order, or by further order of Court on motion filed prior to completion of the plan. Regardless of objection by the creditor, this provision specifically supersedes all language in any confirmed plan that states differently."

7. (Because Judge Funk's court order stated: "Regardless of objection by the creditor, this provision specifically supersedes all language in any confirmed plan that states differently." Hence this overrides the statement in the plan that the legal costs of JGCC will be handled between Debtor and JGCC outside the plan. Aug 2022 Opposition to this ruling is under appeal 3:22-cv-1022.

8. To sum up the court cannot be open to address the mortgage company's need but closed when Debtor has corrections. That is not fair.

9. Debtor filed a Motion to Consolidate October 14, 2022 since the court said I cannot have 2 cases and Debtor has some unfinished business in case 3:10-bk-07291 and needs to get it taken care of.

10. Debtor who was discharged June 25, 2015 was also later arrested on Nov 4, 2015 by the SAO4 when the SAO4 did not even have jurisdiction per the Governor's Executive Order EO 15-01 where he had disqualified Duval SAO4 and appointment of St Johns SAO7 for 2015. But Duval acted anyway without jurisdiction and held me until May 2020. 8 of the 9 charges were dropped Oct 11, 2022. Due to this interference wrongfully by the SAO4 and they are being sued, Debtor could not address the issues in the Federal 2010 case timely. Exhibit A Executive Order EO-15-01; and Exhibit B cases dropped Oct 11, 2022, Exhibit C Confirmation Order; Exhibit D Federal Trade commission story of Greentree indictment.

Wherefore Debtors is requesting the court to consolidate the unfinished Mortgage business from the 2010 case into the 2022 case, so that she can get the proper payoff at the mediation appointment scheduled for Tuesday Nov 22, 2022 before Thanksgiving and refinance please.

Respectfully

/S/ AVA ELECTRIS CANNIE

12959 HUNT CLUB ROAD N

JACKSONVILLE FLORIDA 32224

904-223-0204   904-718-8865

avaelectriscannie@gmail.com avaelectris@comcast.net

**CERTIFICATION OF SERVICE**

I hereby certify a true and correct copy of the foregoing has been email to shafuller@raslg.com,

gvelez@raslg.com and Klabell@raslg.com and bhughes@cobbgonzales.com this October 25

2022.

/S/ AVA ELECTRIS CANNIE

EXHIBIT A

# STATE OF FLORIDA
## OFFICE OF THE GOVERNOR
### EXECUTIVE ORDER NUMBER 15-01

WHEREAS, the Honorable ANGELA B. COREY, State Attorney for the Fourth Judicial Circuit of Florida, has advised Governor RICK SCOTT that an incident report has been filed against Ava Electris Cannie for fraud; and

WHEREAS, the Honorable ANGELA B. COREY has also advised the Governor that the complainant is related to an employee of the state attorney's office; and

WHEREAS, the Honorable ANGELA B. COREY, to avoid a conflict of interest or any appearance of impropriety, has voluntarily disqualified herself and has requested the executive assignment of another State Attorney with respect to the investigation and prosecution of this case and all related matters; and

WHEREAS, the Honorable R.J. LARIZZA, State Attorney for the Seventh Judicial Circuit of Florida, has agreed to accept an executive assignment in this matter; and

WHEREAS, it is in the best interest of the State of Florida and of the ends of justice that the Honorable R.J. LARIZZA discharge the duties of the Honorable ANGELA B. COREY, pursuant to section 27.14, Florida Statutes.

NOW, THEREFORE, I, RICK SCOTT, Governor of Florida, in obedience to my solemn constitutional duty to "take care that the laws be faithfully executed," and pursuant

to the Constitution and laws of the State of Florida, issue the following Executive Order, effective immediately:

Section 1.

The Honorable R.J. LARIZZA, State Attorney for the Seventh Judicial Circuit of Florida, referred to as the "Assigned State Attorney," is assigned to discharge the duties of the Honorable ANGELA B. COREY, State Attorney for the Fourth Judicial Circuit of Florida, as they relate to the investigation, prosecution and all matters related to Ava Electric Cannie.

Section 2.

The Assigned State Attorney or one or more Assistant State Attorneys and Investigators, who have been designated by the Assigned State Attorney, shall proceed immediately to the Fourth Judicial Circuit of Florida, and are vested with the authority to perform the duties prescribed herein.

Section 3.

All residents of the Fourth Judicial Circuit are requested, and all public officials are directed, to cooperate and render whatever assistance is necessary to the Assigned State Attorney, so that justice may be served.

Section 4.

The period of this Executive Assignment shall be for one (1) year, to and including January 12, 2016.

Section 5.

The Assigned State Attorney shall notify the Governor on or before December 12, 2015, if additional time is required.



IN TESTIMONY WHEREOF, I have hereunto set my hand and have caused the Great Seal of the State of Florida to be affixed at Tallahassee, this 12th day of January, 2015.

RICK SCOTT, GOVERNOR

ATTEST:

SECRETARY OF STATE

2015 JAN 12 AM 11: 20
DEPARTMENT OF STATE
TALLAHASSEE, FLORIDA
FILED

EXHIBIT B

| Line / Document | Count | Effective Entered | Description | Pages | Image |
|---|---|---|---|---|---|
| 1476 | -- | 10/10/2022 10/10/2022 | DEFENDANT PRESENT | | |
| 1477 | -- | 10/10/2022 10/10/2022 | FINAL PRETRIAL 10/11/2022 9:00 AM - 307 3RD FLOOR, 501 W ADAMS ST JACKSONVILLE FL 32202 | | |
| 1478 | -- | 10/10/2022 10/10/2022 | @ END OF CALENDAR/11:30AM: FARETTA & PLEA (10/17/22 JS) | | |
| 1479 | -- | 10/11/2022 10/12/2022 | FARETTA HEARING HELD IN FULL | | |
| 1480 | -- | 10/11/2022 10/12/2022 | DEFENDANT COMPETENTLY WAIVED HER RIGHT TO COUNSEL - THE COURT FINDS THAT THE DEFENDANT IS COMPETENT FOR SELF-REPRESENTATION | | |
| 1481 | -- | 10/11/2022 10/12/2022 | JUDGE SALVADOR, TATIANA | | |
| 1482 | -- | 10/11/2022 10/12/2022 | ASST. STATE ATTY. LICANDRO, JOSEPH RUDOLPH | | |
| 1483 | -- | 10/11/2022 10/12/2022 | ASST. PUB. DEF. PRO, SE | | |
| 1484 | -- | 10/11/2022 10/12/2022 | DEFENDANT PRESENT | | |
| 1485 | -- | 10/11/2022 10/12/2022 | DEF. PERMITTED TO W/D PLEA OF NOT GUILTY/ NOLO CONTENDERE | | |
| 1486 D1530 | -- | 10/11/2022 10/12/2022 | ACKNOWLEDGE. OF RIGHTS & VOLUNTARINESS OF ENTRY OF PLEA | 5 | **Available** VOR, User exempt |
| 1487 | 1 | 10/11/2022 10/12/2022 | REDUCED S817.034(4)(A)2 SCHEMES TO DEFRAUD | | |
| 1488 | 1 | 10/11/2022 10/12/2022 | DEFENDANT PLEAD GUILTY | | |
| 1489 | 1 | 10/11/2022 10/12/2022 | DEF. ADJUDGED GUILTY - FINGERPRINTS TAKEN | | |
| 1490 D1534 | 1 | 10/11/2022 10/12/2022 | JUDGMENT AND SENTENCE TO STATE PRISON FOR 1655 DAYS | 6 | **Available** Public access |
| 1491 | 1 | 10/11/2022 10/12/2022 | CREDIT TIME: 1655 DAYS | | |
| 1492 | 1 | 10/11/2022 10/12/2022 | JURISDICTION RESERVED TO DETERMINE RESTITUTION FOR: 60 DAYS | | |
| 1493 | 1 | 10/11/2022 10/12/2022 | LEEA 5.00 IMPOSED | | |
| 1494 | 1 | 10/11/2022 10/12/2022 | COST OF COURT 50.00 IMPOSED | | |
| 1495 | 1 | 10/11/2022 10/12/2022 | CCT 50.00 IMPOSED | | |
| 1496 | 1 | 10/11/2022 10/12/2022 | LGTF 225.00 IMPOSED | | |
| 1497 | 1 | 10/11/2022 10/12/2022 | TNC 3.00 IMPOSED | | |
| 1498 | 1 | 10/11/2022 10/12/2022 | AACC 65.00 IMPOSED | | |
| 1499 | 1 | 10/11/2022 10/12/2022 | SAIEF 100.00 IMPOSED | | |
| 1500 | 1 | 10/11/2022 10/12/2022 | CSTF 20.00 IMPOSED | | |
| 1501 | -- | 10/11/2022 10/12/2022 | FEES DUE: 1/12/2023 | | |
| 1502 | 2 | 10/11/2022 10/12/2022 | NOL PROS (CODE 30) S817.568(2)(A) CRIMINAL USE OF PERSONAL IDENTIFICATION | | |
| 1503 | 3 | 10/11/2022 10/12/2022 | NOL PROS (CODE 30) S817.568(2)(B) CRIMINAL USE OF PERSONAL IDENTIFICATION INFORMATION ($5K-$50K OR 10+ VICTIMS) | | |
| 1504 | 4 | 10/11/2022 10/12/2022 | NOL PROS (CODE 30) S817.61 FRAUDULENT USE OF CREDIT CARD | | |

| Line / Document | Count | Date | Description | Pages | Image |
|---|---|---|---|---|---|
| | 5 | 10/11/2022 10/12/2022 | NOL PROS (CODE 30) S817.568(2)(A) CRIMINAL USE OF PERSONAL IDENTIFICATION | | |
| 1506 | 6 | 10/11/2022 10/12/2022 | NOL PROS (CODE 30) S817.61 FRAUDULENT USE OF CREDIT CARD | | |
| 1507 | 7 | 10/11/2022 10/12/2022 | NOL PROS (CODE 30) S817.568(2)(B) CRIMINAL USE OF PERSONAL IDENTIFICATION INFORMATION ($5K-$50K OR 10+ VICTIMS) | | |
| 1508 | 8 | 10/11/2022 10/12/2022 | NOL PROS (CODE 30) S817.568(2)(B) CRIMINAL USE OF PERSONAL IDENTIFICATION INFORMATION ($5K-$50K OR 10+ VICTIMS) | | |
| 1509 | 9 | 10/11/2022 10/12/2022 | NOL PROS (CODE 30) S817.568(2)(A) CRIMINAL USE OF PERSONAL IDENTIFICATION | | |
| 1510 D1554 | -- | 10/11/2022 10/12/2022 | CLERKS MEMO OF HEARING | 1 | Available VOR, User exempt |
| 1511 D1555 | -- | 10/11/2022 10/12/2022 | SENTENCING GUIDELINES | 3 | Available VOR, User exempt |
| 1512 D1556 | -- | 10/11/2022 10/12/2022 | PAYMENT AUTHORIZATION SHEET | 1 | Available Public access |
| 1515 D1559 | -- | 10/12/2022 10/12/2022 | COMMITMENT CHECKLIST SENT | 2 | Available Public access |
| 1516 D1560 | -- | 10/12/2022 10/12/2022 | UNIFORM COMMITMENT TO CUSTODY OF DEPT. OF CORRECTIONS | 1 | Available Public access |

EXHIBIT C

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CASE NO: 3:10-bk-07291 -JAF
Chapter 13

IN RE:
AVA ELCTRIS CANNIE

_____/

ORDER CONFIRMING CHAPTER 13 PLAN
ALLOWING CLAIMS AND DIRECTING DISTRIBUTION

It having been determined after hearing on November 27, 2012 that the Plan as presented

by the Chapter 13 Trustee as a "housekeeping plan" (a copy of which was provided to all

creditors in attendance and attached hereto), complies with the provisions of 11 U.S.C. §1325, it

is

ORDERED:

1.  The Plan presented in open Court by the Chapter 13 Trustee is confirmed.

2.  The balance of the interim funds shall be applied to the Confirmed Plan payments.

3.  Payments shall be made by the Debtor in the amount of $540.00 per month for months

1-15, $1,000.00 per month for months 16-40 and $615.00 per month for months 41-60.

Payments shall be made to Douglas W. Neway, Trustee, at **P.O. Box 2079, Memphis,**

**Tennessee 38101-2079.**

4.  Notwithstanding and in addition to payments set out in 3 above, the Debtor shall fund

this plan for the applicable commitment period, beginning on the date that the first payment is

due under the Plan, using all disposable income to be paid to unsecured creditors.

5.  The Trustee shall pay all claims provided for in the Plan for which proofs of claims

have been filed.  Distributions shall commence and be made by the Trustee on a monthly basis

following this Confirmation on secured and priority claims only. Distributions shall not

commence to the allowed general unsecured claimants until after the claims bar date.

6.  The Trustee shall make full disbursements in the following order:

  a.    Commissions and costs as the Court may from time to time approve.

  b.    Distributions to creditors who have filed claims and are ruled by the Court

        as priority, secured, or unsecured as set forth in the attached Exhibit A.

        Creditors whose claims are allowed as priority or secured shall be paid the

        amount shown on Exhibit A.

  c.    Any claim or amended claim filed after January 10, 2011, unless

        specifically provided for in Exhibit A, shall receive no distribution.

7.  Secured creditors shall retain their liens.

8.  Any post petition costs or expenses incurred by or on behalf of any secured creditor

will be discharged upon the Debtor's  completion of the plan, unless specifically provided for in

this order, or by further order of Court on motion filed prior to completion of the plan.

Regardless of objection by the creditor, this provision specifically supersedes all language in any

confirmed plan that states differently.

9. This Order is subject to any Objections, Motions to Value Claims, or Adversary

Proceedings pending as of the date of the Confirmation Hearing.  The requirement to object to

secured mortgage claims that are filed prior to confirmation is waived as to the Chapter 13

Trustee and this confirmation shall have no res judicata effect on the Trustee's right to file and

litigate any objections to mortgage claims for 60 days beyond the claims bar date.

10. The property of the estate revests in the Debtor or in any other entity provided for by the Debtor in the terms of the confirmed chapter 13 plan upon discharge of the Debtor or, in the alternative, upon dismissal of the case.

11. The Debtor  shall file all required post petition tax returns with the Internal Revenue Service and provide a copy of the tax return to the Chapter 13 Trustee by April 30th of the year following the taxable year.  If the Debtor has properly filed an extension to file with the Internal Revenue Service and deliver a copy of the tax return to the Chapter 13 Trustee no later than 10 days after the extension date.

12. This Order supersedes any Adequate Protection Orders previously entered in this case and same shall be of no further force and effect.

13. Any objection filed by creditor which is not prosecuted at the confirmation hearing is deemed withdrawn and/or overruled by the entry of this Order.

14. The procedure for treatment of mortgage payment changes and escrow account adjustments during the life of the plan are as follows:

    a.    Mortgage Creditors are required to file a Notice of Mortgage Payment Change setting forth the basis of the change, the amount of the new payment and the date the new payment becomes due. Said Notice shall be filed within a reasonable time prior to the occurrence of the payment change and served upon the Trustee, Debtor and Debtor's counsel.

    b.    Upon receipt of the Notice, the Trustee shall take the following action:

    (1)    If the new payment is less than the current payment, the Trustee shall reduce the payment to the creditor in accordance with the notice, and apply the difference to the unsecured distribution.

(2)     If the new payment amount is greater than the current payment, the Trustee shall compute the additional amount needed to be paid by the Debtor and file a Notice of Plan Payment Change setting forth the new monthly payment and the new payment on the mortgage. If no objection is filed by a party of interest, the Notice of Plan Payment Change will be considered a modification to the confirmed plan requested by the Trustee pursuant to 11 U.S.C. Section 1329. Notice and hearing are waived inasmuch as no creditor will be adversely affected by such change.

15.  If the Debtor has surrendered collateral securing a debt to the creditor and the creditor is entitled to file an unsecured deficiency claim, said claim must be filed within 90 days of the date of this order, unless a Motion for Extension of Time is filed for good cause prior to the expiration of the 90 days and granted by this Court.

16.  Upon the entry of this Order, as to any interest in any collateral that is surrendered by the terms of this plan and/or any secured claim that is paid outside the terms of the plan, the automatic stay imposed by 11 U.S.C. §362 and the stay of the action against co-debtor by 11 U.S.C. §1301 is lifted.  Further, as to any interest in any collateral that is surrendered by the confirmed plan and/or any secured claim paid outside the terms of the plan, the creditor may

AVA ELCTRIS CANNIE                                    CASE NO: 3: 10-bk-07291 -JAF

proceed with obtaining *in rem* relief as allowed by law as to the property described in the plan as

being the collateral subject of their security interest.

DATED this December, 19, 2012 in Jacksonville, Florida.

JERRY A. FUNK
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

In re:                                             CASE NO.:  3: 10-bk-7291-JAF
AVA CANNIE
          Debtor
_____/

## HOUSEKEEPING PLAN PROPOSED BY TRUSTEE
### (no payments on supplemental post-petition claim by JGCC)

_____   **Chapter 13 Plan**          _____   **Amended Chapter 13 Plan**

COMES NOW, the Debtor(s) and files this Chapter 13 Plan.  The projected disposable income of the Debtor(s) is submitted to the supervision and control of the Chapter 13 Standing Trustee, and the Debtor(s) shall pay the following sums to the Chapter 13 Standing Trustee:

PLAN PAYMENTS

| Payment Number by months | Amount of Monthly Plan payment |
|---|---|
| 1 - 15 (September 19, 2010 – November 19, 2011) | $ 540.00 |
| 16 - 40 (December 19, 2011 – December 19, 2013) | $ 1000.00 |
| 41- 60 (January 19, 2014 – August 19, 2015) | $ 615.00 |

The Debtor(s)(s) shall pay by **money order**, **cashier's check** or **wage deduction**,  to Douglas W. Neway, Chapter 13 Standing Trustee, P.O. Box 2079, Memphis, Tennessee 38101-2079.  The Debtor(s) name and case number must be indicated clearly thereon and received by the due dates for payments established by court order.

PAYMENT OF CLAIMS THROUGH THE PLAN

**Attorney Fees**

| Attorney Name | Claim Amount | Payment Amount | Payment Month Numbers |
|---|---|---|---|
| N/A | | | |

**Priority Claims**

The fees and expenses of the Trustee shall be paid over the life of the Plan at the rate allowed as governed by the guidelines of the United States Trustee and

| Name of Creditor | Claim Amount | Payment Amount | Payment Month Numbers |
|---|---|---|---|
| N/A | | | |

**Secured Claims**

| Secured Creditor | Claim Amount | Payment Amount | Payment Month Numbers |
|---|---|---|---|
| Toyota Motor (Claim 4) | $23,328.13 | $406.02 $760.39 | 1 – 20 21 – 40 |
| EverBank (Claim 5) | subject to modification per Court Order of 11-15-12, docket 340. Trustee shall make no disbursements to this creditor | | |
| JGCC Homeowners Assn. (Claim 9) | $748.46 | $ 79.90 | 1 - 10 |
| JGCC Homeowners Assn. Monthly assn. payments September 2010 through September 2012 | $2613.34 | $79.70 $476.96 | 11 - 15 16 - 20 |
| JGCC Post-petition fees & Costs; Filed 5/17/2012 | will not be provided for in the terms of the plan; will be resolved directly between Debtor and Creditor. | | |

**Secured Arrearage**

| Name of Creditor | Claim Amount | Payment Amount | Payment Month Numbers |
|---|---|---|---|
| N/A | | | |

**Secured Gap Payments**

| Name of Creditor | Claim Amount | Payment Amount | Payment Month Numbers |
|---|---|---|---|
| N/A | | | |

**Property to Be Surrendered:**

Creditor Name:                                   Property Address:
N/A

**Valuation of Security:**

| Name of Creditor | Claim Amount | Payment Amount | Payment Month Numbers |
|---|---|---|---|
| N/A | | | |

**(motion to value must be filed consistent with plan treatment)**

**Executory Contracts:**

**The following Executory Contracts are assumed**
**Name of Creditor:**          **Description of Collateral:**

Toyota Motor (Claim 4)        2009 Lexus ES350

**The following Executory Contracts are rejected**:
**Name of Creditor:**                                    **Description of Collateral:**
**N/A**

**Liens to by Avoided pursuant to 11 U.S.C. Section 522(f):**
**N/A**

**Unsecured Creditors:** whose claims are allowed shall receive a pro rate share of the balance of the funds remaining after payments to Priority and Secured Creditors are made.  Approximate percentage: **100%**

Property of the Estate revests in the Debtor(s) upon confirmation of the plan, OR upon completion of all plan payments and the discharge of Debtor(s).

**Other Provisions: (Bold and in larger font)**

**EXHIBIT A**
**CASE NO: 3:10-bk-07291-JAF**
**AVA ELECTRIS CANNIE**
**Chapter 13**

| Claim No. | Creditor | Claim Type | Claim Amount | Amount Allowed | Monthly Payment | Mth |
|---|---|---|---|---|---|---|
| | TRUSTEE EXPENSES | Priority | As set by U.S. Trustee | | | |
| | JGCC PROP OWN ASSOC | Secured | $0.00 | $0.00 | $0.00 | |

*Claim Notes:  No claim filed. Claim paid outside of plan.  Supplemental Claim.*

| Claim No. | Creditor | Claim Type | Claim Amount | Amount Allowed | Monthly Payment | Mth |
|---|---|---|---|---|---|---|
| 01 | MARK FRANZONI | Secured | $39,791.15 | $0.00 | $0.00 | |

*Claim Notes:  The 'Amount Allowed' represents the maintenance of payments on this claim while the case is pending as provided for in Section 1322(b)(5). Claim Disallowed.*

| Claim No. | Creditor | Claim Type | Claim Amount | Amount Allowed | Monthly Payment | Mth |
|---|---|---|---|---|---|---|
| 02 | CITIBANK NA | Unsecured | $18,930.21 | $0.00 | ProRata | |

*Claim Notes:   Claim Disallowed.*

| Claim No. | Creditor | Claim Type | Claim Amount | Amount Allowed | Monthly Payment | Mth |
|---|---|---|---|---|---|---|
| 03 | FIFTH THIRD BANK | Unsecured | $1,431.92 | $1,431.92 | ProRata | |
| 04 | TOYOTA MOTOR CREDIT CORP | Secured | $23,328.13 | $23,328.13 | $406.02 | 1 – 20 |
| | | | | | $760.39 | 21 – 40 |
| | | | | | $0.00 | 41 – 60 |
| 05 | EVERBANK | Secured | $423,401.83 | $0.00 | | |

*Claim Notes:  The 'Amount Allowed' represents the maintenance of payments on this claim while the case is pending as provided for in Section 1322(b)(5). Claim paid outside of plan.*

| Claim No. | Creditor | Claim Type | Claim Amount | Amount Allowed | Monthly Payment | Mth |
|---|---|---|---|---|---|---|
| 06 | INTERNAL REVENUE SERVICE | Priority | $0.00 | $0.00 | $0.00 | |
| 07 | ALLIANCEONE RECEIVABLE MANAGEMENT,INC. | Unsecured | $9,472.00 | $9,472.00 | ProRata | |
| 08 | MAYO CLINIC JACKSONVILLE | Unsecured | $843.00 | $843.00 | ProRata | |
| 09 | JGCC PROP OWN ASSOC | Secured | $748.46 | $3,582.30 | $79.90 | 1 – 10 |
| | | | | | $79.70 | 11 – 15 |
| | | | | | $476.96 | 16 – 20 |
| | | | | | $0.00 | 21 – 60 |
| 10 | HSBC BANK OF NEVADA | Unsecured | $809.29 | $809.29 | ProRata | |
| 11 | HSBC BANK OF NEVADA | Unsecured | $1,543.65 | $1,543.65 | ProRata | |
| 12 | BELLSOUTH TELECOMMUNICATIONS | Unsecured | $354.17 | $0.00 | ProRata | |

*Claim Notes:   Claim Disallowed.*

**EXHIBIT A**
**CASE NO: 3:10-bk-07291-JAF**
**AVA ELECTRIS CANNIE**
**Chapter 13**

| Claim No. | Creditor | Claim Type | Claim Amount | Amount Allowed | Monthly Payment | Mth |
|---|---|---|---|---|---|---|
| 13 | ANGSTROM GRAPHICS | Unsecured | $11,128.44 | $0.00 | ProRata | |
| *Claim Notes:* | *Claim Withdrawn.* | | | | | |
| 14 | ALLIANCEONE RECEIVABLE MANAGEMENT,INC. | Unsecured | $9,472.37 | $0.00 | ProRata | |
| *Claim Notes:* | *Claim Withdrawn.* | | | | | |
| 15 | CITY OF JACKSONVILLE | Secured | $10,005.00 | $0.00 | $0.00 | |
| *Claim Notes:* | *Claim Disallowed.* | | | | | |
| 16 | BBVA COMPASS | Unsecured | $3,536.78 | $0.00 | ProRata | |
| *Claim Notes:* | *Claim Withdrawn.* | | | | | |
| 17 | PROSPERITY BANK | Unsecured | $4,599.35 | $0.00 | ProRata | |
| *Claim Notes:* | *Claim Withdrawn.* | | | | | |
| 18 | BB&T | Unsecured | $30,460.51 | $0.00 | ProRata | |
| *Claim Notes:* | *Claim Withdrawn.* | | | | | |
| 19 | FLORIDA BANK | Unsecured | $3,247.79 | $0.00 | ProRata | |
| *Claim Notes:* | *Claim Withdrawn.* | | | | | |

---

**Debtor Payment Schedule**

| StartDate | Number of Months | PaymentAmount |
|---|---|---|
| September 19, 2010 | 1 - 15 | $540.00 |
| December 19, 2011 | 16 - 40 | $1,000.00 |
| January 19, 2014 | 41 - 60 | $615.00 |

---

Copies to:
Debtor
Douglas W. Neway, Trustee
All Interested Parties

EXHIBIT D

 (cfpb.gov/)

## CFPB and Federal Trade Commission Take Action Against Green Tree Servicing for Mistreating Borrowers Trying to Save Their Homes

**APR 21, 2015**

*Green Tree to Pay $48 Million in Borrower Restitution and $15 Million Fine for Servicing Failures*

**WASHINGTON, D.C.–** Today, the Consumer Financial Protection Bureau (CFPB) and the Federal Trade Commission (FTC) took action against Green Tree Servicing, LLC, for mistreating mortgage borrowers who were trying to save their homes from foreclosure. The mortgage servicer failed to honor modifications for loans transferred from other servicers, demanded payments before providing loss mitigation options, delayed decisions on short sales, and harassed and threatened overdue borrowers. Green Tree has agreed to pay $48 million in restitution to victims, and a $15 million civil money penalty for its illegal actions.

"Green Tree failed consumers who were struggling by prioritizing collecting payments over helping homeowners," said CFPB Director Richard Cordray. "When homeowners in distress had their mortgages transferred to Green Tree, their previous foreclosure relief plans were not maintained. We are holding Green Tree accountable for its unlawful conduct."

Green Tree, headquartered in St. Paul, Minn., is a national mortgage servicing company. It has rapidly expanded into the residential mortgage market and services loans for millions of homeowners. Green Tree specializes in servicing delinquent loans and markets itself as a "high touch" servicer that makes frequent collection calls to consumers.

As a servicer, Green Tree is responsible for, among other things, creating and sending monthly statements to borrowers, collecting payments, and processing payments. For troubled borrowers, it administers short sale and foreclosure relief programs provided by the owner of the loan. These "loss mitigation" programs provide alternatives to foreclosure. Green Tree is responsible for soliciting borrowers for these programs, collecting their applications, determining eligibility, and implementing the loss mitigation program for qualified borrowers.

The CFPB and FTC allege that Green Tree engaged in illegal practices when servicing loans that it acquired from other servicers. According to the complaint filed by the CFPB and FTC, on a number of occasions, Green Tree failed to honor loan modifications that consumers had entered into with their prior servicers and insisted that the consumer pay their original, higher monthly payment. Green Tree also failed at times to get the information and documentation from the prior servicer that it needed to accurately collect payments from consumers. Green Tree demanded payments before providing loss mitigation options, delayed decisions on short sales, and resorted to illegal practices to collect mortgage payments from consumers who fell behind on their loans, including false threats, repeated calls, and revealing debts to third parties, like employers.

Green Tree's failures as a mortgage servicer hurt homeowners. In many cases, Green Tree delayed or deprived borrowers of the opportunity to save or sell their home. Specifically, the Bureau and the FTC allege that from 2010 to 2014, the company:

- **Demanded payments before providing loss mitigation options:** Delinquent consumers who called Green Tree were automatically routed to a debt collector. The CFPB and FTC allege that consumers who wanted to speak with a customer service representative or loss mitigation specialist rather than a collector found that there was no way to do so and were sometimes told that they had to make a loan payment before they could be considered for a loan modification. In reality, consumers did not need to make payments on their loans before they could be considered for a loan modification. For example, the Home Affordable Modification Program ("HAMP"), which Green Tree participated in, does not allow participating servicers to require consumers to make payments before considering them for a loan modification.

- **Failed to honor in-process modifications:** Because Green Tree was rapidly expanding its mortgage servicing business, it often acquired customers who already had an agreement with their previous servicer to modify their loans. The complaint alleges that Green Tree, in many instances, failed to honor these agreements and insisted that consumers pay their old higher mortgage payment.

- **Delayed short sales:** Green Tree's short sale department was frequently unreachable and unresponsive. The complaint alleges that in numerous instances, Green Tree took two to six months to respond to consumer requests for short sales. This could have cost consumers potential buyers, and it may also have cost them other loss mitigation alternatives while their short sale requests were pending.

- **Harassed and threatened overdue borrowers:** The CFPB and FTC allege that if a consumer was two weeks or more past due, Green Tree consumers could

receive seven to 20 phone calls a day. Some Green Tree representatives also told consumers that nonpayment of their mortgage loan could result in arrest or imprisonment. Or, representatives threatened seizure or garnishment of the consumer's wages when Green Tree had no intention to take such actions. Such threats are illegal.

- **Used deceptive tactics to charge consumers convenience fees:** The Bureau and the FTC allege that Green Tree deceived consumers to get them to pay $12 for its pay-by-phone service, called Speedpay. Green Tree representatives would pressure consumers to use the service by telling consumers that Speedpay was the only available payment method to ensure the payment would be received on time. In fact, Green Tree accepted other payment methods that do not involve a fee, such as checks and ACH payments, which consumers could have used to make a timely payment.

This enforcement action covers Green Tree's illegal practices prior to the January 2014 effective date of the CFPB's new mortgage servicing rules.

## Enforcement Action

Under the Dodd-Frank Wall Street Reform and Consumer Protection Act, the CFPB has the authority to take action against institutions engaging in unfair, deceptive, or abusive practices. The CFPB also has authority to take action against institutions violating the Real Estate Settlement Procedures Act, the Fair Credit Reporting Act, and the Fair Debt Collections Practices Act. If entered by the court, today's order would require Green Tree to:

- **Pay $48 million in redress to victims:** Green Tree must pay $48 million to thousands of consumers whose loan modifications were not honored, who had their short sales decisions delayed because of Green Tree's poor servicing, or who were deceptively charged convenience fees when paying their mortgage. Borrowers who receive payments will not be prevented from taking individual action on their claims as a result of this settlement.

- **Engage in efforts to help affected borrowers preserve their home:** For certain borrowers affected by Green Tree's unlawful practices who were not foreclosed on, Green Tree must convert in-process loan modifications into permanent modifications and engage in outreach, including telephone and mail campaigns and translation services, to contact borrowers and offer them loss mitigation options. And Green Tree must halt the foreclosure process, if one is happening, during this outreach and qualification process for these borrowers.

- **End all mortgage servicing violations:** In addition to being subject to the loss mitigation provisions of the CFPB's new mortgage servicing rules, Green Tree is prohibited from making misrepresentations to consumers regarding loss

mitigation, such as false statements about how much consumers owe Green Tree. Green Tree must take other actions relating to servicing loans in loss mitigation, such as acknowledging the receipt of a short sale request and providing consumers with a list of any missing documents, within five days.

- **Adhere to rigorous servicing transfer requirements:** Green Tree must create a detailed data integrity program that tests, identifies, and corrects errors in loans transferred to Green Tree to ensure that Green Tree has accurate information about consumers' loans. Green Tree may not transfer loans in loss mitigation, in or out, unless all account-level documents and data relating to loss mitigation are provided to the new servicer by the date of transfer.

- **Honor prior loss mitigation agreements:** Green Tree must honor loss mitigation agreements entered by the prior servicer, continue processing pending loss mitigation requests received in the transfer, and review and evaluate pending loss mitigation applications within a set time.

- **Provide access to quality customer service:** Green Tree must ensure that consumers are referred to a loss mitigation or other appropriate supervisor upon request, have access to individuals able to stop foreclosure proceedings, and are not subject to compensation arrangements that encourage collection over loss mitigation.

- **Pay $15 million civil penalty:** Green Tree will make a $15 million penalty payment to the CFPB's Civil Penalty Fund.

The Bureau's complaints and consent orders are not findings or rulings that the defendants have actually violated the law.

**A copy of the order entered by the court is available at:** https://files.consumerfinance.gov/f/201504_cfpb_consent-order-green-tree.pdf ⤓ (https://files.consumerfinance.gov/f/201504_cfpb_consent-order-green-tree.pdf)

**A copy of the complaint is available at:** https://files.consumerfinance.gov/f/201504_cfpb_complaint-green-tree.pdf ⤓ (https://files.consumerfinance.gov/f/201504_cfpb_complaint-green-tree.pdf)

Today's settlement is a collaborative effort with the FTC. The FTC's press release is available at: https://www.ftc.gov/news-events/press-releases/2015/04/national-mortgage-servicing-company-will-pay-63-million-settle ⬈ (https://www.ftc.gov/news-events/press-releases/2015/04/national-mortgage-servicing-company-will-pay-63-million-settle)

### ###

*The Consumer Financial Protection Bureau (CFPB) is a 21st century agency that helps consumer finance markets work by making rules more effective, by consistently and fairly enforcing those rules, and by empowering consumers to take more control over their economic lives. For more information, visit* **www.consumerfinance.gov** *(cfpb.gov/).*

**PRESS INFORMATION**

If you want to republish the article or have questions about the content, please contact the press office.

Go to press resources page (cfpb.gov/about-us/newsroom/press-resources/)

An official website of the United States government